BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
JULIA Q. PENG (SBN 318396)
jpeng@cpmlegal.com
NOORJAHAN RAHMAN (SBN 330572)
nrahman@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiff and*
*the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| 2 Andy Enterprise Corporation d/b/a Cuon–Vietnamese Street Food, an Oregon Corporation, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>      vs.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., and DOES 1-10,<br><br>                      Defendants. | Case No.<br><br>Class Action<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................. 1

JURISDICTION AND VENUE ........................................................................... 3

INTRADISTRICT ASSIGNMENT ...................................................................... 4

PARTIES ............................................................................................................... 4

FACTUAL ALLEGATIONS ................................................................................. 5

    A.    Wells Fargo's Prior Indiscretions Restricted Its Initial Participation in the PPP .................. 5

    B.    Wells Fargo Petitioned and Received a "Narrow and Temporary" Lifting of Its Restrictions Under the Guise of Expanding Its Reach to More Small Businesses Under 50 Employees and Nonprofits ...................... 6

    C.    Wells Fargo Maximized Its Profits by Prioritizing the Largest Customers Rather Than Comply with PPP Requirements and Its Own Representations ............................................. 8

FACTUAL ALLEGATIONS REGARDING PLAINTIFF ................................... 14

CLASS ACTION ALLEGATIONS ...................................................................... 18

CAUSES OF ACTION ......................................................................................... 19

FIRST CAUSE OF ACTION ............................................................................... 19
Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.)

SECOND CAUSE OF ACTION .......................................................................... 21
Fraud and Deceit (Cal. Civil Code § 1710)

THIRD CAUSE OF ACTION .............................................................................. 22
Unjust Enrichment

FOURTH CAUSE OF ACTION ........................................................................... 23
Accounting

PRAYER FOR RELIEF ........................................................................................ 23

JURY TRIAL DEMANDED ................................................................................. 24

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint
Demand for Jury Trial

Plaintiff 2 Andy Enterprise Corporation d/b/a Cuon–Vietnamese Street Food, on behalf of itself and all others similarly situated, alleges the following facts and claims against Defendants WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., inclusive (collectively, "Wells Fargo," the "Company" or "Defendants"), relating to the Company's lending practices. Plaintiff makes these allegations based upon personal knowledge, and upon information and belief as to all other matters, based on the investigation conducted by counsel, which included, but is not limited to an analysis of: (1) Wells Fargo's regulatory filings; (2) Wells Fargo's press releases and other public statements; (3) securities analyst and media reports; (4) and other publicly-available information. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after reasonable discovery.

## **INTRODUCTION**

1.      This action is brought to rectify the unlawful conduct engaged in by Wells Fargo in manipulating the taxpayer-funded Paycheck Protection Program ("PPP"), which is designed to help small businesses, like Plaintiff, that are in dire economic straits caused by the COVID-19 pandemic.

2.      COVID-19, a highly infectious virus that has claimed so many American lives, has caused unprecedented harm to businesses in the United States. In March 2020, the federal and state governments responded to the outbreak of COVID-19 and skyrocketing infection rates by ordering non-essential businesses to close. Small businesses, such as Plaintiff, have been hit particularly hard by the mandatory closures.

3.      On March 27, 2020, in the midst of the COVID-19 pandemic and the related massive economic downturn that threatened the survival of small businesses, the federal government passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide interim relief to small businesses. The PPP loan/grant program was included in the CARES Act to provide urgently needed interim financial assistance to small businesses adversely impacted by the pandemic.

Class Action Complaint
Demand for Jury Trial

4.     The express intent of Congress, embodied into the text of the CARES Act itself, was to prioritize "small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals."

5.     The CARES Act issued governance directing eligible banks participating in the PPP, to process applications from all businesses on a first-come, first-served basis.

6.     Despite being partially precluded from taking part in the PPP program due to its past unlawful conduct, Wells Fargo maneuvered to gain full access to the PPP program and cash in on the large commissions offered to the lender for issuing risk-free loans.

7.     The PPP program not only offered lenders generous commissions (between 1–5% of the loan amount), it also made these loans risk-free for the lender by having the Small Business Administration ("SBA") and the federal government guarantee the loans.  As stated by the United States Treasury when rolling out the PPP:

> Are these loans guaranteed by the SBA? Yes, the SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States.[1]

8.     Wells Fargo saw an opportunity to expand its share of the pie when the initial demand overwhelmed eligible banks.  Wells Fargo represented to the Federal Reserve that it would abide by the terms of the PPP and assist small businesses with fewer than 50 employees if it were allowed full participation in the program.

9.     The Federal Reserve agreed to temporarily lift Wells Fargo's restrictions. The Federal Reserve stated that the restrictions were lifted on a "narrow and temporary" basis so that the Company could issue PPP loans to businesses with fewer than 50 employees.[2]

---

[1] *See* United States Treasury, "Paycheck Protection Program (PPP) Information Sheet for Lenders," *available at* https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?, (last visited July 11, 2020).

[2] *Available at* https://www.usatoday.com/story/money/2020/04/08/wells-fargo-expand-small-business-rescue-lending-fed-exemption/2969910001/, (last visited July 25, 2020).

Class Action Complaint
Demand for Jury Trial

10.     Now a full-fledged PPP lender, Wells Fargo was positioned to understand that the funds would quickly run out.  Wells Fargo knew it only had a short timeline to obtain commissions.

11.     Instead of proceeding as it publicly announced it would, Wells Fargo engaged in wrongful conduct designed to maximize its fees at the expense of the small businesses owners who the CARES Act was intended to help.  Among other things, Wells Fargo: (1) strung along small business owners before rejecting these applications; and/or (2) prioritized loan applications from larger companies seeking higher loan amounts because processing those applications generated larger loan origination fees for the Company.

12.     Wells Fargo's conduct shut out small and minority-owned businesses, the very groups the CARES Act was enacted to protect.  Well Fargo instead favored big businesses, which in many cases did not even need the money to survive:

> In all, more than $2 billion has been returned, the Small Business Administration said. At least $500 million of that figure went to large, publicly held companies, The Post has determined.[3]

13.     Wells Fargo misled applicants in processing their loan applications, and Wells Fargo processed the PPP applications in a way that maximized its commissions with the least amount of work in order to make the Company the most money.

14.     Had Wells Fargo complied with the law, small businesses would have received loan proceeds from their PPP applications.

15.     As a result of Wells Fargo's unfair business practices, however, thousands of small businesses that were entitled to loans under the PPP and most at risk did not receive the critical loan proceeds.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) at least some members of the proposed Class are citizens of different states than Defendants; (2) the proposed class consists of

---

[3] *See* Cindy Boren, "Steven Mnuchin Calls Lakers' $4.6 Million Federal Coronavirus Loan 'Outrageous'", THE WASHINGTON POST, April 26, 2020.

Class Action Complaint
Demand for Jury Trial

1    more than 100 persons or entities; and (3) the claims of the proposed Class Members exceed

2    $5,000,000 in the aggregate.

3          17.    This Court has personal jurisdiction over Defendants because Defendants do

4    business in this District and a substantial number of the events giving rise to the claims alleged

5    herein took place in this District.

6          18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

7    substantial part of the events or omissions giving rise to the alleged claims occurred in this District.

8    Defendants are headquartered in San Francisco and marketed, promoted, and took applications for

9    the PPP loans in this District.

10                           **INTRADISTRICT ASSIGNMENT**

11          19.    Pursuant to Local Rule 3-2(d), Plaintiff requests that this action be assigned to the

12    San Francisco Division of this District because a substantial part of the events or conduct giving rise

13    to the claims in this action occurred in the County of San Francisco.

14                                  **PARTIES**

15          20.    Plaintiff, 2 Andy Enterprise Corporation d/b/a Cuon–Vietnamese Street Food, is a

16    small minority-owned business in Portland, Oregon.  Plaintiff is a popular fast-food Vietnamese

17    restaurant, with over 500 reviews on Google and 4.7 stars, and has 16 employees.

18          21.    Plaintiff was eligible and promptly submitted a PPP loan application to Wells Fargo.

19    Due to Wells Fargo's wrongful conduct, as alleged herein, Plaintiff's loan application was not timely

20    or properly processed, and Plaintiff did not receive any PPP loan proceeds under the PPP through

21    Wells Fargo, thereby prejudicing and damaging Plaintiff.

22          22.    Defendant WELLS FARGO & COMPANY is a holding company headquartered in

23    San Francisco, California at 420 Montgomery Street.  The company's subsidiaries provide various

24    banking and financial services to businesses and consumers.   WELLS FARGO & COMPANY

25    conducts substantial business in this District.

26          23.    Defendant WELLS FARGO BANK, N.A., is a bank and the main subsidiary of

27    WELLS FARGO & COMPANY, headquartered in San Francisco, at 420 Montgomery Street.

28    Wells Fargo conducts substantial business in all Counties within the State of California.

- 4 -

24.     Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1–10, but is informed and believes and therefore alleges that each such fictitiously-named defendant is responsible in some manner for the damages and wrongdoing in this Complaint. Plaintiff will amend its Complaint to state the true names, identities, or capacities of such fictitiously named defendants when ascertained.

## FACTUAL ALLEGATIONS

### A.     Wells Fargo's Prior Indiscretions Restricted Its Initial Participation in the PPP

25.     In a case litigated in 2010 in this Court, the Honorable William H. Alsup ordered Wells Fargo to pay $203 million to California consumers and small business owners because Wells Fargo manipulated its processing of customer debit card purchases to maximize overdraft fees.[4] Instead of posting transactions chronologically, Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.[5]

26.     The Court ordered Wells Fargo to return approximately $203 million to its customers in restitution and enjoined its abusive accounting practices.  After appeals, remands, reinstatements, and further appeals, on October 29, 2014, the Ninth Circuit affirmed the judgment.[6]

27.     At the time that Wells Fargo was increasing revenue through overdraft fees, it was also busy opening fake accounts for customers.  On September 8, 2016, the Consumer Financial Protection Bureau fined Wells Fargo $100 million for the "widespread illegal practice of secretly opening unauthorized accounts."[7]  The order also required Wells Fargo to pay an estimated $2.5 million in refunds to customers and hire an independent consultant to review its procedures.[8]

28.     As a result of Wells Fargo's egregious conduct, the Federal Reserve imposed restrictions on Wells Fargo's ability to engage in additional lending in February 2018 and Wells Fargo was precluded from expanding beyond its asset cap limitations.  Those restrictions still existed

---

[4] *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).
[5] *Id.*
[6] *Gutierrez v. Wells Fargo Bank*, NA, 589 F. App'x 824, 827 (9th Cir. 2014).
[7] *Available at* https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-fines-wells-fargo-100-million-widespread-illegal-practice-secretly-opening-unauthorized-accounts/ (last visited July 11, 2020).
[8] *Id.*

Class Action Complaint
Demand for Jury Trial

1  in early 2020.  Thus, when the PPP was launched on April 3, 2020, Wells Fargo could only issue

2  $10 billion in PPP loans.

3  **B.    Wells Fargo Petitioned and Received a "Narrow and Temporary" Lifting of Its
       Restrictions Under the Guise of Expanding Its Reach to More Small Businesses Under
4      50 Employees and Nonprofits**

5       29.    Wells Fargo initially approached the Federal Reserve before the PPP was rolled out

6  and asked for permission to underwrite more loans under the PPP.  The government declined to lift

7  the restrictions against Wells Fargo because it had not sufficiently demonstrated that its customers

8  were safe in light of the fake account scandal:

9       Fed officials had earlier said they would remove the restrictions only after Wells Fargo
       demonstrated that it had improved itself enough that its customers would be safe from
10      further harm — something that has not happened yet.[9]

11      30.    Thereafter, the PPP loan program was launched with the restrictions on Wells Fargo

12  in place.  On April 5, 2020, Wells Fargo issued a press release announcing its participation in the

13  PPP, emphasizing it would focus its efforts on "nonprofits and small businesses with fewer than 50

14  employees":

15      Wells Fargo & Company (NYSE: WFC) announced today it is targeting to distribute
16      a total of $10 billion to small business customers under the requirements of the PPP
       and ***will focus on serving two segments of its customer population: nonprofits and
17      small businesses with fewer than 50 employees***. The company has received forms
       from customers expressing interest in the PPP that it expects will fill the company's
18      capacity to lend under the program, as it continues to operate under existing asset cap
       limitations.
19
                              *        *        *
20
       "We are committed to helping our customers during these unprecedented and
21      challenging times, but are restricted in our ability to serve as many customers as we
       would like under the PPP. ***While all businesses have been impacted by this crisis,
22      small businesses with fewer than 50 employees and nonprofits often have fewer
       resources. Therefore, we are focusing our efforts under the Paycheck Protection
23      Program on these groups," said Wells Fargo CEO Charlie Scharf***.[10]

24

25

26  _____
   [9] *See* Emily Flitter, "Fed May Ease Lending Curb on Wells Fargo to Help Small Businesses," THE
27  NEW YORK TIMES, April 6, 2020.
   [10] *Available at* https://www.businesswire.com/news/home/20200405005041/en/Wells-Fargo-
28  Receives-Strong-Interest-Paycheck-Protection, (last visited July 10, 2020).

Class Action Complaint
Demand for Jury Trial

31.    After initial demand overwhelmed the SBA and participating banks, Wells Fargo again petitioned the Federal Reserve to lift its $10 billion lending cap so that the Company could expand its participation in the PPP.

32.    As a result of these further entreaties from Wells Fargo and under pressure to increase access to lenders before the PPP funds run dry, the Federal Reserve temporarily lifted the restrictions, thus allowing Wells Fargo to participate fully in the PPP.  The Federal Reserve stated at the time that it had only lifted the restrictions on Wells Fargo on a "narrow and temporary" basis so that the Company could issue PPP loans to businesses with fewer than 50 employees.

33.    On April 8, 2020, Wells Fargo announced its newfound privileges to process PPP loan applications and its intentions to "expand relief to many more small businesses and nonprofit customers":

> Wells Fargo & Company (NYSE: WFC) announced today that beginning immediately, in response to the actions by the Federal Reserve, it will expand its participation in the Paycheck Protection Program and *offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program*.

> "Wells Fargo appreciates the targeted action of the Federal Reserve to support the needs of small businesses through PPP and *looks forward to expanding relief to many more small businesses and nonprofits*. In the first two days alone, we received more than 170,000 indications of interest from our customers, and know there is much more need. While the asset cap does not specifically restrict Wells Fargo's participation in this program, *this action by the Federal Reserve will enable Wells Fargo to provide additional relief for our customers and communities*," *said Wells Fargo CEO Charlie Scharf*."[11]

34.    Wells Fargo affirmatively represented that it "will expand its participation in the Paycheck Protection Program and offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program."  Wells Fargo also stated it would conform its conduct to "the terms of the program," which includes processing applications on a first-come, first-served basis.

---

[11] *Available at* https://newsroom.wf.com/press-release/community-banking-and-small-business/ wells-fargo-expand-participation-paycheck, (last visited July 11, 2020).

Class Action Complaint
Demand for Jury Trial

**C.    Wells Fargo Maximized Its Profits by Prioritizing the Largest Customers Rather Than Comply with PPP Requirements and Its Own Representations**

35.    The PPP program offered lenders generous commissions on loans (between 1–5% of the loan amount) while making those loans essentially risk-free.  As stated by the United States Treasury when rolling out the PPP, the SBA and the federal government guaranteed these loans:

> Are these loans guaranteed by the SBA? Yes, the SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States.[12]

36.    The commission of 1-5% of the loan amount was calculated according to the following schedule provided by the United States Treasury:

> How will lenders be compensated? Processing fees will be based on the balance of the financing outstanding at the time of final disbursement. SBA will pay lenders fees for processing PPP loans in the following amounts:
>
> • Five (5) percent for loans of not more than $350,000;
> • Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
> • One (1) percent for loans of at least $2,000,000.[13]

37.    Under this schedule, Wells Fargo would receive $17,500 in commission for loaning $350,000, $60,000 for loaning $1,999,999, and up to $100,000 for loaning $10 million.  Given these incentives, Wells Fargo correctly concluded that bigger loans produce bigger commissions.

38.    Wells Fargo knew that smaller loans meant smaller commissions with significantly more work.  Unsophisticated small businesses were not knowledgeable about the PPP requirements and needed guidance in putting together the necessary paperwork.  Wells Fargo knew these small businesses would need a lot of handholding and follow-up work.  The Treasury advised banks that the following underwriting was required by banks:

> What underwriting is required? As explained in the PPP Interim Final Rule, you will need to confirm receipt of borrower certifications; confirm receipt of information demonstrating that a borrower had employees for whom the borrower paid salaries and

---

[12] *See* United States Treasury, "Paycheck Protection Program (PPP) Information Sheet for Lenders," *available at* https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?, (last visited July 11, 2020).
[13] *Id.*

Class Action Complaint
Demand for Jury Trial

payroll taxes on or around February 15, 2020; confirm the dollar amount of average monthly payroll costs; and follow applicable Bank Secrecy Act requirements.[14]

39.    Now a full-fledged PPP lender, Wells Fargo was positioned to understand that the funds would quickly run out.  Wells Fargo knew it only had a short timeline to obtain commissions.

40.    Wells Fargo's ability to maximize its commissions depended on processing the largest dollar value loans from its largest customers in the quickest amount of time.

41.    To do so, Wells Fargo determined that the path forward was not to focus on those who needed the loans the most—the small businesses with fewer than 50 employees—but instead to process larger-dollar loans from bigger customers who were more sophisticated, needed less hand-holding, and who would be able to get the necessary paperwork together quicker and with less mistakes.

42.    Despite its misleading public statements that Wells Fargo would focus on lending to small businesses and nonprofits, Wells Fargo instead prioritized larger companies asking for bigger loans.  By prioritizing larger customers instead of small businesses whose actual need for the PPP loans was far greater, Wells Fargo received significantly larger commissions.  Just as it had done with respect to its unlawful artificial sequencing of debit card transactions in the past, Wells Fargo processed PPP loan applications in a manner designed to maximize the Company's own profits against federal regulations.

43.    Small businesses, the backbone of the American economy, have been battered by COVID-19.  On March 11, 2020, the World Health Organization declared the COVID-19 a pandemic.  On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California to slow the spread of COVID-19.  Similarly, March 16, 2020, Governor Kate Brown released Executive Order 20-07 to address the public health threat posed by the novel infectious coronavirus (COVID-19) in Oregon, providing, among other things, that all food establishments that offer food or drink are prohibited from offering or allowing on-premises consumption of food or drink.

---

[14] *Id.*

Class Action Complaint
Demand for Jury Trial

44.     On March 27, 2020, the federal government passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.   The legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.  The legislation included $377 billion in federally guaranteed loans to small businesses and established a $500 billion government lending program for distressed companies.

45.     Created under the CARES Act, the PPP was initially a $349 billion loan program for small businesses with funds available for loans originated from February 15 through June 30, 2020.[15]  On July 4, 2020, President Trump extended the deadline for loans to August 8, 2020.[16]

46.     The PPP offered small businesses eight weeks of cash-flow assistance through 100 percent federally guaranteed loans backed by the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.  Private banks merely administered these loans.  One of the most important aspects of the PPP loans is that the terms provide criteria for loan forgiveness through a process that incentivizes companies to retain, and not lay off, employees during this crisis.

47.     The United States Senate and House of Representatives expressly intended the funds from the CARES Act be used to support small businesses, particularly rural businesses, veteran owned businesses, woman owned businesses, and businesses owned by socially and economically disadvantaged persons.[17]  The Bill states:

> It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years.[18]

[15] *Available at* https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/349-billion-emergency-small-business-capital-cleared-sba-and-treasury-begin-unprecedented-public (last visited July 12, 2020).
[16] *See* Neil Hare, "PPP Loan Program Extended; Loan Data Released: What Small Businesses Need to Know," *available at* https://www.forbes.com/sites/allbusiness/2020/07/08/ppp-loan-program-extended-loan-data-released-what-small-businesses-need-to-know/#6f3c0db67f11 (last visited July 12, 2020).
[17] H.R.748(P)(iv) — CARES Act.
[18] *Id.*

Class Action Complaint
Demand for Jury Trial

48.     After the Federal Reserve temporarily allowed Wells Fargo to expand its participation in the PPP, Wells Fargo's CEO Charlie Scharf stated that the Company intended to follow the law and direct the PPP funds to the small businesses that Congress intended to help.  Mr. Scharf said in an interview:

> While all businesses have been impacted by this crisis, **small businesses with fewer than 50 employees and nonprofits often have fewer resources. Therefore, we are focusing our efforts under the Paycheck Protection Program on these groups**."[19]

49.     On April 3, 2020, the federal government announced that small businesses could begin applying for PPP loans.[20]  Independent contractors and self-employed individuals could apply and begin receiving loans on April 10, 2020.[21]

50.     The Federal Regulations governing mandated that the PPP funds be distributed "first-come, first-served."[22]  The rules also require that "Lenders must comply with the applicable lender obligations set forth in this interim final rule."[23]  The federal regulations state as follows:

> **Is the PPP ''first-come, first-served?''**
> **Yes.**[24]

51.     Therefore, lenders were required to process PPP applications on a "first-come, first-served" basis.  This was crucial because it was widely reported at the time that demand for the PPP loans was overwhelming and that the available funds might be quickly depleted.  Small businesses were told to act fast because their applications would be processed in the order they were received.

52.     Because Wells Fargo did not process PPP applications on a first-come, first-served basis, it failed to comply with the federal regulations governing the PPP program.

---

[19] *Available at* https://www.businesswire.com/news/home/20200405005041/en/Wells-Fargo-Receives-Strong-Interest-Paycheck-Protection (last visited July 12, 2020).
[20] *Available at* https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf (last visited July 12, 2020).
[21] *Id.*
[22] *See* 85 Fed. Reg. No. 73, 13 CFR Part 120, April 15, 2020, "Business Loan Program Temporary Changes; Paycheck Protection Program."
[23] *Id.*
[24] *Id.*

- 11 -

Class Action Complaint
Demand for Jury Trial

53.     Upon information and belief, Wells Fargo received thousands of applications and chose to prioritize bigger loans for larger companies.  As a result of its unlawful conduct, prioritizing the processing of larger loans, Wells Fargo—along with other banks—received nearly $6 billion in fees while hundreds of thousands of small businesses received nothing.

54.     Data provided by the SBA indicates that, rather than processing PPP loan applications on a "first-come, first-served" basis as required, banks prioritized and front-loaded applications with higher loan amounts.  This is shown by comparing data from loans processed between April 3, 2020 (when the PPP started) through April 13th and data for the last three days, between April 13th and April 16th (when the program ran out of money).

55.     Here is a breakdown of the loans processed through April 13, 2020:[25]

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

56.     Here is the same information, updated through April 16, 2020[26]:

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

[25] *Available at* https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20Read-Only.pdf (last visited July 12, 2020).
[26] *Available at* https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf (last visited July 12, 2020).

Class Action Complaint
Demand for Jury Trial

57.    Comparing the April 13 data to the April 16 data shows that in the last three days of the PPP, the banks processed loan applications for $150,000 and under at twice the rate of larger loans:

| LOAN SIZE | APPROVED LOANS (April 13, 2020) | APPROVED LOANS (April 16, 2020) | CHANGE (%) |
|---|---|---|---|
| $150K and Under | 725,058 | 1,229,893 | **70%** |
| > $150K - $350K | 156,590 | 224,061 | **43%** |
| >$350K - $1M | 102,473 | 140,197 | **37%** |
| >$1M - $2M | 31,176 | 41,238 | 32% |
| >$2M - $5M | 16,516 | 21,566 | 31% |
| >$5M | 3,273 | 4,412 | 35% |

58.    This data shows that banks front-loaded applications for the largest loans. If banks processed applications on a first-come, first-served basis as required, the percentage change of applications submitted in the last three days the program would be consistent among all application types.

59.    Wells Fargo prioritized processing the applications with higher loan amounts because with funds set to run out, Wells Fargo needed to cash in on the applications that resulted in larger commissions for the Company first. Just as it had done with respect to overdraft fees in the past, Wells Fargo artificially processed applications to maximize its own fees, despite the fact that doing so was detrimental and unfair to smaller business owners.

60.    Specifically, Wells Fargo was entitled under the PPP to receive origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.[27]  Wells Fargo received $17,500 in commission for loaning $350,000, $60,000 for loaning $1,999,999, and up to $100,000 for loaning $10 million. Larger loans absolutely resulted in higher commission for Wells Fargo.

---

[27]*Available at* https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf (last visited July 12, 2020).

Class Action Complaint
Demand for Jury Trial

61.    Upon information and belief, Wells Fargo prioritized those PPP loans that earned them the highest commissions rather than processing PPP loan applications on a "first-come, first-served" basis as required.  In doing so, Wells Fargo enriched itself at the expense of Plaintiff and the Class who needed the PPP loans to make payroll, retain their employees, and stay afloat.

62.    Wells Fargo was aware that it would not be able to process all the PPP applications it received; but concealed from Plaintiff and the Class that it was prioritizing larger loans in order to maximize its commissions.

63.    Had Wells Fargo informed Plaintiff and the Class of these facts, then Plaintiff and the Class would have submitted their PPP applications to other lending institutions that were actually processing applications on a "first-come, first-served" basis.

## FACTUAL ALLEGATIONS REGARDING PLAINTIFF

64.    Plaintiff, 2 Andy Enterprise Corporation d/b/a Cuon–Vietnamese Street Food, is a small minority-owned business in Portland, Oregon.  Plaintiff is a popular fast-food Vietnamese restaurant, with over 500 reviews on Google and 4.7 stars, and has 16 employees.  Like many small businesses, Plaintiff's restaurant business has been severely and adversely affected by the COVID-19 pandemic.

65.    Plaintiff learned that the CARES Act established the Paycheck Protection Program and that, according to the Treasury Department, the PPP would enable small businesses like Plaintiff's company to maintain payroll and cover certain other expenses.

66.    On **April 15, 2020**, facing potential financial ruin, Plaintiff submitted its PPP loan application through Wells Fargo Bank for $97,635.  The application disclosed that Plaintiff had sixteen employees.  Plaintiff's application to Wells Fargo was thorough and complete, and contained all the necessary information.  Upon submitting its PPP application, Plaintiff received no response from Wells Fargo.

67.    Plaintiff chose Wells Fargo because it banks at Wells Fargo and based on the representations of Wells Fargo's CEO that: "While all businesses have been impacted by this crisis, small businesses with fewer than 50 employees and nonprofits often have fewer resources. Therefore, we are focusing our efforts under the Paycheck Protection Program on these groups."

- 14 -

1  Wells Fargo also represented that the loans would be provided on a "first-come, first-served" basis.

2  Based on Wells Fargo's representations, Plaintiff believed that Wells Fargo would be its best choice

3  for obtaining the PPP funding it needed.

4       68.     Plaintiff repeatedly contacted Wells Fargo regarding the status of Plaintiff's PPP loan

5  application but experienced extreme difficulty in reaching live representatives at Wells Fargo;

6  Plaintiff often had to wait hours before speaking with a representative that was unfamiliar with

7  Plaintiff's application.

8       69.     Plaintiff called Wells Fargo over ten times and each time, Plaintiff received different

9  advice from Wells Fargo representatives on what actions Plaintiff should take to obtain a PPP loan.

10  The direction from Wells Fargo representatives were often confusing, inapplicable, and did little to

11  help Plaintiff obtain a PPP loan.

12       70.     Plaintiff sent numerous emails to Wells Fargo regarding its loan application.

13  Plaintiff repeatedly stressed that the PPP loan was vital to keeping the business open.

14       71.     On June 5, 2020, Plaintiff emailed Wells Fargo asking for an update on its loan

15  application.

16       I need the fund to keep my business open.  If you are not able to do anything, I would have

17       to call Wells Fargo again. I feel like this is going around and around each time I speak to a
     new person.

18       72.     On June 5, 2020, Justin Via, Business Development Officer and Assistant Vice

19  President of Wells Fargo responded.

20       I did receive your email. I have my manager working on this now. I will let you know once

21       I have an update.

22       73.     On June 8, 2020, instead of receiving a response from Mr. Via or his manager,

23  Plaintiff received an automated message asking for documents that Plaintiff already submitted to

24  Wells Fargo with the application.

25       74.     On June 9, 2020, Plaintiff emailed Mr. Via asking for advice on what Plaintiff should

26  do in response to Wells Fargo's request for documents.

27       Since you know my case well and understand the situation of the loan, if there anything that
     you can do to help? Or should I follow the instruction from the email?

28

- 15 -

Class Action Complaint
Demand for Jury Trial

75.    Plaintiff received no response from Mr. Via in response to its inquiries.

76.    On June 25, 2020, Plaintiff again contacted Mr. Via asking for an update on the loan, stressing that "I tried to call but there is no luck with getting anyone one (sic) the phone. I really need the loan to keep my business open."

77.    Again, Plaintiff received no response from Mr. Via.

78.    On June 29, 2020, Plaintiff tried for a third time to contact Mr. Via for a response.

It's so sad that everyone from Wells Fargo dropped the ball on me. This is my last email to you. Do you think you can escalate this to your manager again?

79.    Mr. Via did not respond to Plaintiff's third inquiry either.

80.    Despite consistent efforts by Plaintiff through telephone calls and emails to reach someone at Wells Fargo, **Plaintiff never received a response from Mr. Via nor received any resolutions from Wells Fargo.**

81.    On July 13, 2020, Plaintiff sent a letter to Wells Fargo, again laying out why Wells Fargo improperly denied the PPP loan.  Plaintiff provided all the supporting documents needed for Wells Fargo to review and process Plaintiff's loan application for its restaurant.

82.    On July 16, 2020, Wells Fargo provided the reason for their denial in a letter:

When you applied for this application, you applied as a Sole Proprietor which requires different documentation.

83.    However, Plaintiff's PPP loan application clearly shows that it was applying as an S-corporation.



**Paycheck Protection Program**
**Borrower Application Form**

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☒ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other |
| --- | --- |
| **Business Legal Name** | |
| Cuon - Vietnamese Street Food | |

84.    Despite Plaintiff's numerous phone calls and submission of written documentation evidencing its eligibility as a small business owner to receive PPP loans, Wells Fargo's response

Class Action Complaint
Demand for Jury Trial

1  shows it was fundamentally indifferent to Plaintiff's plight:  Wells Fargo never bothered to review

2  Plaintiff's loan application again, sticking with its denial because Plaintiff "applied as a Sole

3  Proprietor," despite clear evidence in Plaintiff's loan application that it is an S-corporation.

4        85.    Wells Fargo failed to comply with Federal Regulations and the intent of Congress in

5  distributing the PPP funds.  Notwithstanding its assurances to the contrary, Wells Fargo did not

6  "focus" its lending efforts on businesses with under 50 employees and did not process the

7  applications on a "first-come, first-served" basis.  And Wells Fargo's actions belie its stated policy

8  that it would provide PPP loans to small minority-owned businesses, like Plaintiff.  Instead, Wells

9  Fargo allowed Plaintiffs' application to languish.  In contrast, to enrich itself during this crisis and

10  in violation of the intent of Congress and in contradiction to its own assurances, Wells Fargo

11  prioritized bigger loan applications, typically of large and mid-sized companies, moving them to the

12  "front of the line" to maximize its profits on these zero risk federally-insured loans.

13        86.    Wells Fargo's misrepresentations regarding its PPP loan application processing for

14  consumers and small businesses during the COVID-19 pandemic and economic crisis was designed

15  to mislead the public and to conceal its efforts to use these emergency funds to maximize its own

16  commissions and profits.

17        87.    Plaintiff and the Class reasonably relied on Wells Fargo's affirmative representations

18  and communications in making the choice to apply for their one PPP loan through Wells Fargo, not

19  knowing that, contrary to those representations, Wells Fargo would prioritize large or "more

20  important" borrowers.  Wells Fargo's actions directly impacted the likelihood that Plaintiff and the

21  Class would be able to obtain a loan through the PPP.

22        88.    Because of their reliance on Wells Fargo's representations, Plaintiff and the Class

23  suffered economic harm.  Had Plaintiff and the Class known that Wells Fargo was misrepresenting

24  the true facts and prioritizing large loans, Plaintiff could have avoided the harm by applying for a

25  loan at a different PPP loan provider.

26        89.    As a result of the conduct of Wells Fargo, Plaintiff's business suffered financial harm

27  and lost the opportunity to obtain timely funding that was likely to be forgiven by the federal

28  government, lost the value of the available PPP funds, lost access to critically-needed capital during

Class Action Complaint
Demand for Jury Trial

the worst recession in decades, could not make payroll, and was forced to lay off talented and hardworking employees that Plaintiff had invested valuable resources in, and generally lost economic opportunities to conduct business due to lack of operating capital.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action on behalf of itself and a class defined as follows:  All individuals and small businesses in the United States that satisfied the criteria to receive a loan under the PPP and who timely applied for a PPP loan through Wells Fargo, but whose applications were not processed and/or who were not issued loans by Wells Fargo.

91.     Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

92.     The joinder of all members is impracticable as the members of the Class are too numerous.  Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Members of the Class may be identified from records maintained by Wells Fargo since the Company received written applications for PPP loans from all Class members.

93.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the law that is complained of herein.

94.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

95.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants agreed to comply with the terms of the PPP loan program and regulations governing the program;

- 18 -

1          (b)     whether defendants agreed to process PPP loan applications on a first-come,

2  first-served basis;

3          (c)     whether defendants failed to disclose to Plaintiff and Class members the fact

4  that Wells Fargo was prioritizing certain loan applications and not processing all applications based

5  on the time received; and

6          (d)     to what extent the members of the Class have sustained damages and the

7  proper measure of damages.

8      96.     A class action is superior to all other available methods for the fair and efficient

9  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

10  damages suffered by individual Class members may be relatively small, the expense and burden of

11  individual litigation make it impossible for members of the Class to individually redress the wrongs

12  done to them. There will be no difficulty in the management of this action as a class action.

13                                     **CAUSES OF ACTION**

14                                 **FIRST CAUSE OF ACTION**

15          **Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

16      97.     Plaintiff repeats and realleges each and every allegation contained above as if fully

17  set forth herein.

18      98.     The California Unfair Competition Law (hereinafter "UCL") defines unfair business

19  competition to include any "unlawful, unfair or fraudulent" act or practice, and any "unfair,

20  deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200. Under the UCL, a

21  business act or practice is "unfair" if the gravity of the harm to the alleged victims outweigh the

22  reasons, justifications and motives of the alleged wrongdoer.

23      99.     Defendants violated the "unlawful" prong of the UCL; a business act or practice is

24  "unlawful" under the UCL if it violates any other law or regulation.

25      100.    The Small Business Administration Regulations that govern the PPP funds,

26  specifically SBA Interim Final Rule § *m*. [Docket No. SBA-2020-0015] 13 CFR Part 120, Business

27  Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34, mandated that

28

Class Action Complaint
Demand for Jury Trial

1  the funds be distributed "first-come, first-served."  Wells Fargo instead prioritized processing larger

2  loans over smaller loans that Wells Fargo received earlier.

3       101.   Defendants violated the "unfair" prong of the UCL; defendants undermined both the

4  intent of PPP loans and the process to issue the loans by prioritizing large borrowers to the detriment

5  of the "small business" applicants the funds were intended to support.  In addition, Defendants

6  affirmatively made misrepresentations to their PPP applicants and the public about the process,

7  unfairly inducing applicants to apply with Defendants, and thereby resulting in an unjust financial

8  benefit to Defendants at the expense of Plaintiff and the Class.

9       102.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive

10  members of the public.

11       103.   As set forth above, the Defendants' conduct included affirmative representations

12  about the loan approval process including but not limited to statements that the "focus" and

13  "priorities" of the bank in processing and funding PPP loans.  These statements were false.  Those

14  representations were made with the intent to generate business from Plaintiff and the Class, to induce

15  Plaintiff and the Class to choose Defendants as their lender for the PPP loan, and to cause consumers

16  to reasonably rely on those representations.

17       104.   Defendants deceived Plaintiff by failing to disclose that Defendants did not intend to

18  process PPP applications on a first-come, first-served basis and that Defendants instead intended to

19  prioritize those clients with bigger accounts and/or higher loan value applications.

20       105.   Defendants' acts and practices as described herein have deceived Plaintiff and were

21  highly likely to deceive members of the public.  Specifically, in deciding with which bank should it

22  apply for a PPP loan, Plaintiff relied upon Defendants' misleading and deceptive representations

23  regarding the bank's loan application and approval process.  Each of these factors played a

24  substantial role in Plaintiff's decision to apply with Defendants, and Plaintiff would not have applied

25  for a PPP loan with Defendants in the absence of Defendants' misrepresentations, and instead would

26  have applied at a different bank.  Plaintiff has suffered monetary and economic loss as a direct result

27  of Defendants' practices described above.

28

Class Action Complaint
Demand for Jury Trial

106.    Defendants have engaged in "unfair" and "deceptive" representations to the public as set forth above, including making false statements of material fact with respect to the PPP application process.

107.    Defendants intentionally disregarded their legal requirement to process PPP loan applications and distribute PPP funds on a "first-come, first-served" basis.  Defendants prioritized large businesses and processed bigger loans applications first, to the detriment of small business applicants.

108.    The gravity of the harm resulting from these unfair acts and practices outweighed any conceivable reasons, justifications, and/or motives the Defendants had to profit from PPP loans.  By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of California Business & Professions Code § 17200, *et seq*.

109.    Defendants have improperly obtained money and property directly or indirectly from Plaintiff and the Class through its unfair acts and practices.  As such, Plaintiff requests that this Court enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future, most notably in light of the program's extension to August 6, 2020.

## SECOND CAUSE OF ACTION

### Fraud and Deceit (Cal. Civil Code § 1710)

110.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

111.    Defendants were obligated to tell Plaintiff and the other Class members of all information Defendants possessed that was material to Plaintiff's and the other Class members' interests.  Once Defendants communicated certain facts to Plaintiff and the Class, they were required to disclose additional facts necessary to avoid misleading Plaintiff and the Class.

112.    As alleged herein, Defendants issued press releases and statements to the public at the time that Wells Fargo could fully participate in the PPP loan program to the effect that Wells Fargo intended to prioritize small businesses with fewer than 50 employees and nonprofits, that Wells Fargo would comply with the terms of the PPP loan program, and that Wells Fargo would process PPP loans on a first-come, first-served basis.

Class Action Complaint
Demand for Jury Trial

113.    Despite its practices to the contrary of these public representations, Defendants failed to disclose to Plaintiff and the Class that Wells Fargo did not intend to fulfill its promises, did not intend to adhere to the PPP regulations, did not intend to process PPP loans on a first-come, first-served basis, but rather intended to prioritize higher value loans and/or "more important" customers.

114.    During the Class Period, Defendants intentionally concealed such material facts from Plaintiff and the Class with the intent to defraud Plaintiff and the Class.  Defendants knew that Plaintiff and the Class would not have submitted their PPP loan applications to Wells Fargo if the true facts were disclosed, and instead that Plaintiff and the Class would have selected a different bank.  As alleged herein, Defendants concealed the facts in order to wrongfully induce Plaintiff and the Class to enter into such transactions.

115.    Plaintiff and other members of the Class were unaware of these concealed facts and had no means of ascertaining such concealed facts.  Defendants concealed facts that were highly material to Plaintiff and other members of the Class because Plaintiff and other members of the Class would not have retained Defendants to act as their bank to process their PPP loan application had Defendants disclosed the true facts.

116.    Defendants benefitted from their wrongdoing at the expense of Plaintiff and other members of the Class; Defendants obtained higher commissions and profits from the PPP loan program than they would have had they complied with the law.

117.    As a result of Defendants' concealment of these material facts, Plaintiff and other members of the Class have been injured.

### THIRD CAUSE OF ACTION

#### Unjust Enrichment

118.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

119.    By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Plaintiff and other members of the Class.

Class Action Complaint
Demand for Jury Trial

120.    During the relevant period, Defendants received unlawful commissions or profits relating to the PPP loan program as a result of prioritizing higher dollar loan applications and by failing to adhere to their own representations and the regulations governing the PPP loan program.

121.    Plaintiff and other members of the Class were harmed because their applications were not processed in the order they were received and Plaintiff and other members of the Class did not receive PPP loan proceeds.

122.    Plaintiff and other members of the Class seek an order from this Court mandating disgorgement of the unjust enrichment received by each defendant.

## FOURTH CAUSE OF ACTION

### Accounting

123.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

124.    At all relevant times Defendants solicited PPP loan applications from Plaintiff and other members of the Class.

125.    During the Class Period, Defendants obtained more commissions and profits while acting as a banker and banking agent for Plaintiff and other members of the Class with respect to the PPP loan application process.

126.    Plaintiff and the Class seek an accounting from Defendants to identify all profits, commissions, and compensation received from third parties during the Class Period related to the PPP loan program.

127.    Plaintiff and the Class seek a constructive trust over all the profits, commissions, and compensation received by Defendants during the Class Period related to the PPP loan program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    For an order certifying the Class as defined above, appointing Plaintiff as representative for the Class, and appointing Plaintiff's counsel as counsel for the Class;

B.    For an order declaring Defendants' actions to be unlawful;

- 23 -

Class Action Complaint
Demand for Jury Trial

1        C.      For declaratory and equitable relief to Plaintiff and other members of the Class;

2        D.      For injunctive relief prohibiting Defendants from engaging in the misconduct

3 described herein;

4        E.      For an award of all recoverable compensatory, statutory, and other damages

5 sustained by Plaintiff and the members of the Class, including disgorgement, unjust enrichment, and

6 all other available relief under applicable law;

7        F.      For an award of punitive damages pursuant to applicable law;

8        G.      For reasonable attorneys' fees and expenses as permitted by applicable statutes and

9 law, including, but not limited to, Code of Civil Procedure § 1021.5;

10        H.      For taxable costs;

11        I.      For pre and post-judgment interest as allowed by law; and

12        J.      For any other relief the Court deems just.

## JURY TRIAL DEMANDED

Plaintiff requests a trial by jury of all claims that are so triable.

Dated: July 29, 2020              **COTCHETT, PITRE & McCARTHY, LLP**

By: _____*/s/ Brian Danitz*_____

BRIAN DANITZ
JULIA Q. PENG
NOORJAHAN RAHMAN

*Attorneys for Plaintiff and the*
*Proposed Class*

Class Action Complaint
Demand for Jury Trial